## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                        No. CR 08-1542 JB

FRANCISCO CARBAJAL-HERNANDEZ,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Sentencing Memorandum Demonstrating "Crime of Violence" Enhancement Is Inapplicable, filed January 7, 2009 (Doc. 22). The Court held a sentencing hearing on April 30, 2009. The primary issues are: (i) whether the Court should apply the modified categorical approach and look at certain judicial documents to determine under which part of the statute Defendant Francisco Carbajal-Hernandez was convicted; and (ii) whether the underlying offense constitutes a crime of violence under U.S.S.G. § 2L1.2. The Court finds that the statute in question is divisible, but that the statute contains no element set that would constitute a crime of violence. Because Carbajal-Hernandez' conviction for Coercion (Category B Felony) does not a crime of violence under U.S.S.G. § 2L1.2, the Court finds that U.S.S.G. § 2L1.2's 16-level enhancement does not apply.

## PROCEDURAL BACKGROUND

Carbajal-Hernandez' Presentence Report refers to a Nevada indictment which states that on an unspecified date, Carbajal-Hernandez "did . . . willfully, unlawfully, and feloniously use physical force, or the immediate threat of such force, against [J.D.] . . . by grabbing the said [J.D.] . . . by the

face and/or neck and by putting his hand down the shirt of said [J.D.], touching her breast and /or grabbing at her groin area."  Presentence Report at 5 (disclosed November 14, 2008)("PSR") On August 21, 2006, Carbajal-Hernandez pled guilty to felony "Coercion" in the Eighth Judicial District Court in Las Vegas, Nevada.  See id. ¶ 5, at 3.  The Nevada Coercion statute states:

> 1. It is unlawful for a person, with the intent to compel another to do or abstain from doing an act which the other person has a right to do or abstain from doing, to:

> (a) Use violence or inflict injury upon the other person or any of his family, or upon his property, or threaten such violence or injury;

> (b) Deprive the person of any tool, implement or clothing, or hinder him in the use thereof; or

> (c) Attempt to intimidate the person by threats or force.

> 2. A person who violates the provisions of subsection 1 shall be punished:

> (a) Where physical force or the immediate threat of physical force is used, for a category B felony by imprisonment in the state prison for a minimum term of not less than 1 year and a maximum term of not more than 6 years, and may be further punished by a fine of not more than $5,000.

> (b) Where no physical force or immediate threat of physical force is used, for a misdemeanor.

Nev. Rev. Stat. § 207.190.  Pursuant to his guilty plea, Carbajal-Hernandez was convicted and sentenced to a period of 24 to 72 months imprisonment, suspended with a term of probation for an indeterminate period not to exceed five years.  See id.

The Amended Judgment of Conviction (Plea of Guilty) states: "The Defendant previously appeared before the Court with counsel and entered a plea of guilty to the crime(s) of **COERCION (Category B Felony)**, in violation of NRS 207.190 . . . ."  Amended Judgment of Conviction (Plea of Guilty) at 1, filed in federal court January 7, 2009 (Doc. 22-2)("Amended Judgment and Conviction")(bold in original).  The Amended Judgment of Conviction also states: "**THE**

**DEFENDANT IS HEREBY ADJUDGED** guilty of said offense(s) . . . . " <u>Id.</u> (bold in original).

Following his conviction for Coercion, Carbajal-Hernandez was deported to Mexico on January 18, 2008.  <u>See id.</u>  On May 2, 2008, a Border Patrol Agent received notification of a sensor activation near the border between the United States and Mexico.  The agent scanned the area in question and spotted five individuals – including Carbajal-Hernandez – walking across the border into the United States seven miles east of the Santa Teresa Port of Entry in Sunland Park, New Mexico.  <u>See id.</u> ¶ 4, at 3.  A Border Patrol Agent responded to the area and found Carbajal-Hernandez and the individuals accompanying him hiding in the bushes.  <u>See</u> id.  Carbajal-Hernandez admitted to the agent that he was a Mexican citizen and that he was illegally present in the United States.  <u>See id.</u>

On September 15, 2008, Carbajal-Hernandez pled guilty to illegal re-entry.  On November 24, 2008, Carbajal-Hernandez appeared before the Court for a sentencing hearing at which the Court addressed the possibility that Carbajal-Hernandez's Nevada conviction for Coercion might qualify for a greater sentencing enhancement.  The Court noted that the Nevada conviction might be a crime of violence under U.S.S.G. § 2L.1.2(b)(1)(A)(ii).  <u>See</u> Transcript of November 24, 2008 Sentencing Hearing at 3:5-25 (Court)("Tr.").[1]  Upon Carbajal-Hernandez's attorney's request, and with the United States' agreement, the Court continued the sentencing hearing.  <u>See id.</u> at 7:7 (Jameson, Messec, Court).

On January 7, 2009, Carbajal-Hernandez filed a sentencing memorandum arguing that his Nevada conviction does not qualify as a crime of violence for purposes of U.S.S.G. § 2L.1.2(b)(1)(A)(ii).  <u>See</u> Sentencing Memorandum at 6.  According to Carbajal-Hernandez, the

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

United States bears the burden of proving that the crime-of-violence enhancement applies and has not met its burden of proving that the physical-force element of the Nevada coercion statute under which Carbajal-Hernandez was convicted amounts to the destructive force necessary for the offense to qualify for the enhancement.  See Sentencing Memorandum at 6.  Carbajal-Hernandez argues that the "physical force" element in Nev. Rev. Stat. § 207.190 may denote a force that is less than the destructive physical force that is required for the crime-of-violence sentencing enhancement. Sentencing Memorandum at 9.

The United States argues that the Court should apply the modified categorical approach to determine whether Carbajal-Hernandez' Nevada conviction constitutes a crime of violence under U.S.S.G. § 2L.1.2(b)(1)(A)(ii) because the Nevada statute defining the offense is divisible.  See United States' Sentencing Memorandum Maintaining That the Crime of Violence Enhancement is Applicable at 2, filed January 26, 2009 (Doc. 24)("Response").  The United States insists that such an approach reveals that Carbajal-Hernandez was convicted under Nev. Rev. Stat. § 207.190(a), which has an element which may give rise to a crime of violence  because that section of the statute requires the use of violence or the infliction of injury on another person.  See Response at 4.  The United States also argues that the requirement in Nev. Rev. Stat. § 207.190(b), of the use of force, or of the immediate threat of physical force, is a sentencing factor and not an element of a crime. See Response at 4.

Carbajal-Hernandez argues that the United States' conclusion that his conviction falls under Nev. Rev. Stat. § 207.190(a) is based on flawed analysis that could just as readily lead to the conclusion that he was convicted under Nev. Rev. Stat. § 207.190(b) or Nev. Rev. Stat. § 207.190(c).  See Defendant's Reply to United States' Sentencing Memorandum Filed January 26, 2009, Contesting the Inapplicability of the "Crime of Violence" Enhancement at 2, filed February

-4-

3, 2009 (Doc. 25)("Reply").  Carbajal-Hernandez also insists that, even if he was convicted under Nev. Rev. Stat. § 207.190(a), the United States has not shown that the operative elements in that section – "[u]se violence or inflict injury" – require the physical force necessary to satisfy to the crime-of-violence enhancement of U.S.S.G. § 2L.1.2(b)(1)(A)(ii).  Reply at 4.

On April 30, 2009, the parties presented argument in support of their sentencing memoranda. At the April 30, 2009 hearing, the Court asked the United States what basis it had for asserting that "physical force or the immediate threat of physical force" was a sentencing factor rather than an element of felony coercion.  Transcript of April 30, 2009 Hearing at 5:2-4 (taken April 30, 2009)(Court)("Tr. II").  The United States did not cite any legal authority for its position, but argued that the structure of the statute suggested such an interpretation.  See id. at 5:12-19 (McCulloch).

Carbajal-Hernandez' attorney stated at the April 30, 2009 hearing that the essence of his argument is that the Nevada statute at issue is ambiguous and that the United States has not proved that "physical force" in the Nevada statute denotes the level of force necessary to constitute a crime of violence under § 2L1.2(b).  Tr. II at 7:18-25 (Jameson).  In essence, Carbajal-Hernandez was saying that the words "physical force" in Nevada's statute could mean something different from physical force in U.S.S.G. § 2L.1.2(b).  Carbajal-Hernandez suggested that, while the Tenth Circuit has interpreted crimes of violence to require violent or destructive physical force, there was no indication that Nevada law interprets physical force in such a way.

## RELEVANT LAW REGARDING A CRIME OF VIOLENCE

Section 2L1.2(a) of the United States Sentencing Guidelines provides for a base-offense level of 8 for re-entry after deportation.  See U.S.S.G. § 2L1.2(a).  Section 2L1.2(b)(1)(A)(ii) requires a 16-level enhancement "[i]f the defendant previously was deported . . . after . . . a conviction for a felony that is . . . a crime of violence." U.S.S.G. § 2L1.2(b)(1)(A)(ii).  The

application notes to U.S.S.G. § 2L1.2 define a "crime of violence."

> "Crime of violence" means any of the following: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

U.S.S.G. § 2L1.2 cmt. n. 1(B)(iii)(emphasis added).

## 1.    Categorical and Modified Categorical Approach.

 "[Section] 2L1.2's 'as an element' language limits the scope of a proper inquiry to the statutory definition of the prior offense and does not permit judicial examination of the facts behind conviction." United States v. Zuniga-Soto, 527 F.3d 1110, 1113 (10th Cir. 2008).  Thus, generally, in determining whether a prior offense has, as an element, the use, attempted use, or threatened use of physical force, a Court must limit its inquiry to the offense's statutory definition and ignore the facts of the underlying offense.  See id. at 1118.  See also United States v. Yanez-Rodriguez, 555 F.3d 931, 944 (10th Cir. 2009)("When a defendant contests whether a prior conviction is a crime of violence, the sentencing court is generally required to follow the 'categorical approach' as adopted in Taylor v. United States, 495 U.S. 575, 600 . . . (1990).").  This inquiry is called the "categorical approach."  United States v. Yanez-Rodriguez, 555 F.3d at 944.

At times, however, a court "may consider certain judicial records only for the purpose of determining which part of a divisible statute was charged against a defendant, and, therefore, which part of the statute to examine on its face."  United States v. Zuniga-Soto, 527 F.3d at 1113.  If the statute at issue "reaches a broad range of conduct, some of which merits an enhancement and some of which does not, courts resolve the resulting ambiguity by consulting reliable judicial records."  United States v. Martinez-Hernandez, 422 F.3d 1084, 1086 (10th Cir. 2005).  In other words, where a defendant was convicted under a statute that has multiple sub-parts, with some containing physical

-6-

force as an element and some not containing such an element, a court may look at judicial documents, such as charging documents, to determine under which set of elements a defendant was convicted.  See United States v. Herrera, 286 Fed.Appx. 546, 554 (10th Cir. 2008)(unpublished opinion).  The Tenth  Circuit has stated that this so-called "modified categorical" approach is appropriate where a statute defining the underlying offense contains multiple element sets or subparts under which the defendant may have been charged.  See id. at 555.  Thus, under the modified categorical approach, a court will look at judicial documents to determine under what set of elements in a divisible statute a defendant was charged.  See United States v. Zuniga-Soto, 527 F.3d at 1120-21. Once the Court determines which set of elements apply, the Court will then analyze the applicable set of elements to determine whether those elements contain a requirement of physical force.  In interpreting the statutory elements, the Court may look to case law interpreting those elements.  See id. at 1122 (citing Texas case law in analyzing the elements of a Texas criminal statute); United States v. Herrera, 286 Fed.Appx. at 557 ("[I]t is proper for this court to consider the state court's interpretation of the underlying statute of conviction, in this case § 242.  Furthermore, we give deference to the state court's interpretation of its own law.").

     **2.**     **Meaning of "Crime of Violence."**

The Tenth Circuit has recently interpreted the "physical force" language in U.S.S.G. § 2L1.2 cmt. n. 1(B)(iii) to require mechanical physical force.  See United States v. Rodriguez-Enriquez, 518 F.3d 1191, 1194 (10th Cir. 2008).  The Tenth Circuit in United States v. Rodriguez-Enriquez explained that a conviction for assault two (drugging a victim), under Colorado law, is not a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A)(ii).  See United States v. Rodriguez-Enriquez, 518 F.3d at 1191-92.  Under Colorado law

[a] person commits the offense of assault two (drugging a victim) if "[f]or a purpose other than lawful medical or therapeutic treatment, he intentionally causes stupor, unconsciousness, or other physical or <u>mental impairment</u> or injury to another person by administering to him, without his consent, a drug, substance, or preparation capable of producing the intended harm."

<u>United States v. Rodriguez-Enriquez</u>, 518 F.3d at 1192 (quoting Colo.Rev.Stat. Ann. § 18-3-203(1)(e)) (emphasis in original). The Tenth Circuit explained: "Even if we were to agree that drugging involves the use of force, we must still decide what is added by the adjective <u>physical</u>." <u>United States v. Rodriguez-Enriquez</u>, 518 F.3d at 1193 (emphasis in original). The Tenth Circuit "reject[ed] the view that the word <u>physical</u> relates to the effect of the force, because if the word has that meaning, it adds nothing to the Guideline definition of crime of violence." <u>Id.</u> at 1194 (emphasis in original).

The Tenth Circuit in <u>United States v. Rodriguez-Enriquez</u> decided that "the adjective <u>physical</u> must refer to the mechanism by which the force is imparted to the person of another." <u>Id.</u> at 1194 (emphasis in original). The Tenth Circuit explored the meaning of physical force by asking:

In what circumstances, then, are we likely to think of the force as being generated by <u>physical</u> means? When someone is struck by a fist, a bat, a projectile, we have no difficulty in characterizing the force against the person as physical. In those instances the force on the victim is generated mechanically. Kinetic energy from the fist, bat, or projectile is transferred to the body of the victim. Although the matter is far from certain, the absence of colorable alternative meanings for <u>physical</u> suggest that it is the presence of this mechanical impact that defines when force is <u>physical</u>. In contrast, the effect of poison on the body is achieved by chemical action, not by mechanical impact.

<u>Id.</u> (emphasis in original). The Tenth Circuit also noted that, in its previous opinion in <u>United States v. Perez-Vargas</u>, it had observed that "'intentionally exposing someone to hazardous chemicals'" would not be a crime of violence. <u>United States v. Rodriguez-Enriquez</u>, 518 F.3d at 1195 (internal quotations omitted)(quoting <u>United States v. Perez-Vargas</u>, 414 F.3d 1282, 1286-87 (10th Cir. 2005)).

-8-

The Tenth Circuit noted in United States v. Rodriguez-Enriquez that, "[a]lthough there is no doubt that one could use physical force to drug someone, as by forcing a drink down the victim's throat, drugging by surreptitious means does not involve the use of physical force." United States v. Rodriguez-Enriquez, 518 F.3d at 1195. The Tenth Circuit explained that the Colorado statute criminalized "harm caused by the nonconsensual administration of a drug, substance or preparation [–][t]he harm . . . caused by chemical action on the victim's body." Id. at 1195 (internal quotation marks omitted). The Tenth Circuit concluded by noting that

> [a] sentencing judge may, for proper reasons, depart from the Guideline range; and under Gall v. United States, 128 S.Ct. 586 (2007), the judge has discretion to vary from that range. In exercising that discretion the judge is not bound by what may seem to be an artificial distinction between shooting a victim and poisoning him.

United States v. Rodriguez-Enriquez, 518 F.3d at 1195.

The Tenth Circuit has also observed that "'crime of violence' is defined more narrowly in § 2L1.2 than in other contexts because the definition does not encompass acts involving the use of force against property or acts that merely pose a risk of harm to another person." United States v. Herrera, 286 Fed.Appx. at 557 (internal quotation marks and citations omitted). Because "crime of violence" is defined more narrowly in § 2L1.2 than in 18 U.S.C. § 16, see United States v. Herrera, 286 Fed.Appx. at 557, the Tenth Circuit has found that the Supreme Court's ruling in Leocal v. Ashcroft, 543 U.S. 1 (2004), is relevant to analyzing whether a statute falls under U.S.S.G. § 2L1.2 by having as an element the use, attempted use, or threatened use of physical force against the person of another. See United States v. Herrera, 286 Fed.Appx. at 557. In Leocal v. Ashcroft, the Supreme Court examined whether Florida's driving under the influence offense qualified as a crime of violence under 18 U.S.C. § 16. See Leocal v. Ashcroft, 543 U.S. at 4-5. The Supreme Court in Leocal v. Ashcroft held that 18 U.S.C. § 16's phrasing and its emphasis on the use of physical force

against another person "suggests a category of violent, active crimes that cannot be said naturally to include DUI offenses." Leocal v. Ashcroft, 543 U.S. at 11.

The Tenth Circuit has applied this gloss on the meaning of "crime of violence" articulated in Leocal v. Ashcroft to U.S.S.G. § 2L1.2. See United States v. Herrera, 286 Fed.Appx. at 557. In United States v. Herrera, the Tenth Circuit analyzed whether a California battery statute qualified as a crime of violence under U.S.S.G. § 2L1.2. After examining the statute and the California case law interpreting the statute, the Tenth Circuit determined that, although the statutory language required "force or violence," "offensive non-violent touching" qualified as battery according to California case law. See United States v. Herrera, 286 Fed.Appx. at 558. The Tenth Circuit in United States v. Herrera explained:

> Having clearly found that offensive non-violent touching qualifies as battery under Cal.Penal Code § 242, we must determine whether or not § 242's definition has as an element the use, attempted use or threatened use of physical force against the person of another as required by the enhancement at issue. As stated by the Supreme Court in Leocal, crimes of violence suggest a category of violent, active crimes. 543 U.S. at 11 . . . . This categorical statement conflicts with the California courts' numerous holdings that the least offensive touching may constitute battery under § 242. Based on the cited statement from the Supreme Court in Leocal, 543 U.S. at 11, 125 S.Ct. 377 which we have interpreted in Hays, non-violent touching seems to exist outside the category of active, violent crimes.

United States v. Herrera, 286 Fed.Appx. at 558. The Tenth Circuit in United States v. Herrera therefore found that the California battery statute did not constitute a crime of violence under U.S.S.G. § 2L1.2. See United States v. Herrera, 286 Fed.Appx. at 559.

## ANALYSIS

The United States maintains that the Court should apply the modified categorical approach to determine whether Carbajal-Hernandez' Nevada conviction constitutes a crime of violence under U.S.S.G. § 2L.1.2(b)(1)(A)(ii). The United States also urges the Court to find that the 16-level

enhancement from U.S.S.G. § 2L1.2 applies because Carbajal-Hernandez' Nevada conviction "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2 cmt. n. 1(B)(iii)(emphasis added). Carbajal-Hernandez was not convicted of an enumerated offense. Thus, the enhancement only applies if the underlying crime "has as an element the use, attempted use, or threatened use of physical force against the person of another." The Court finds that, although the statute is divisible, given that it has multiple element sets under which a defendant may be convicted, the modified categorical approach is not necessary in this case because none of the statute's element sets give rise to a crime of violence.[2] In analyzing

_____

[2] The Court has previously noted that the Tenth Circuit has left unanswered the question to what documentation a court can look in identifying the statute of conviction at the outset. See United States v. Cunningham, 2008 WL 6049940, at *26 n.16 (D.N.M.). The Court in United States v. Cunningham explained:

> The pure categorical approach, however, would not seem to apply to the threshold issue of determining the statute of conviction. Presumably, if the issue were contested, a court would look to judicial documentation to determine the actual statute of conviction, even if the court could not use that same documentation once the statute of conviction was established to determine if the crime was a violent felony. The issue seems to be one that has received little judicial examination. The Ninth Circuit has considered the issue, and the case law from the Ninth Circuit suggests that what has been labeled the modified categorical approach – consultation of reliable judicial documents such as plea agreements, judgments, and verdicts – is the appropriate standard for the initial issue of identifying the actual statute of conviction. See, e.g., United States v. Franklin, 235 F.3d 1165, 1172 (9th Cir. 2000)(using charging document to determine statute of conviction where PSR did not identify statute was reversible error); United States v. Vasquez, 2008 WL 2906522 at *2 (9th Cir.)(noting court may rely on PSR to ascertain statute of conviction if defendant has not objected to the PSR's determination)(slip copy)(unpublished opinion).

United States v. Cunningham, 2008 WL 6049940, at *26 n.16. Carbajal-Hernandez' PSR identifies the statute under which Carbajal-Hernandez was convicted in Nevada. The parties have accepted as correct the statute and the relevant language that appear in the PSR. The Court therefore has no call to discuss whether it is permissible to look to charging documents to determine under which statute Carbajal-Hernandez was convicted.

the statute, the Court concludes that  Carbajal-Hernandez' Nevada conviction does not constitute a crime of violence under U.S.S.G. § 2L1.2.  The 16-level enhancement therefore does not apply in this case.

Generally, in determining whether a prior offense has, as an element, the use, attempted use, or threatened use of physical force, a court must limit its inquiry to the offense's statutory definition and ignore the facts of the underlying offense.  See  United States v. Zuniga-Soto, 527 F.3d at 1118; United States v. Yanez-Rodriguez, 555 F.3d at 944 ("When a defendant contests whether a prior conviction is a crime of violence, the sentencing court is generally required to follow the 'categorical approach' as adopted in Taylor v. United States, 495 U.S. 575, 600 . . . (1990).").  Nevertheless, the Court "may consider certain judicial records only for the purpose of determining which part of a divisible statute was charged against a defendant, and, therefore, which part of the statute to examine on its face."  United States v. Zuniga-Soto, 527 F.3d at 1113.

According to the Court's construction of the Nevada Coercion statute, the statute does not "reach[] a broad range of conduct, some of which merits an enhancement and some of which does not . . . ." United States v. Martinez-Hernandez, 422 F.3d 1084, 1086 (10th Cir. 2005).   Without such an ambiguity, there is no need for the Court to consult judicial records to determine under which element set Carbajal-Hernandez was convicted.  The Nevada Coercion statute provides for two classes of offenses.  Under § 207.190(2)(a):

> 2. A person who violates the provisions of subsection 1 shall be punished:
>
> (a) Where physical force or the immediate threat of physical force is used, for a category B felony by imprisonment in the state prison for a minimum term of not less than 1 year and a maximum term of not more than 6 years, and may be further punished by a fine of not more than $5,000.

Nev. Rev. Stat. § 207.190(2)(a).  On the other hand, § 207.190(2)(a) provides that, "[w]here no

physical force or immediate threat of physical force is used, [the defendant shall be punished] for a misdemeanor."  Nev. Rev. Stat. § 207.190(2)(b).  Thus, based on the statute, there is a set of elements under which a defendant can be convicted without using, or threatened to use physical force against the person of another – the misdemeanor set.  To be convicted under that element set, the defendant must commit one of the acts enumerated in § 207.190(1), which provides:

> 1. It is unlawful for a person, with the intent to compel another to do or abstain from doing an act which the other person has a right to do or abstain from doing, to:
>
> (a) Use violence or inflict injury upon the other person or any of his family, or upon his property, or threaten such violence or injury;
>
> (b) Deprive the person of any tool, implement or clothing, or hinder him in the use thereof; or
>
> (c) Attempt to intimidate the person by threats or force.

Nev. Rev. Stat. § 207.190(1).  Given the language of § 207.190(2)(b), the state need show nothing more to establish a conviction for a misdemeanor.

An examination of these elements reveals that they do not categorically qualify as a crime of violence because it is possible to commit the misdemeanor of Coercion by committing an act that would fall outside the definition of a crime of violence.  For example, it is possible to be convicted under this statute for a misdemeanor by "[d]epriv[ing] the person of any tool, implement or clothing, or hinder[ing] him in the use thereof . . . ."  Nev. Rev. Stat. § 207.190(1)(b).  Neither the language of this part of the statute nor the Nevada case law interpreting it suggest this element requires any physical force or threats of physical force.  To the contrary, § 207.190(2)(b) expressly provides that, "[w]here no physical force or immediate threat of physical force is used, [the defendant shall be punished] for a misdemeanor."  Nev. Rev. Stat. § 207.190(2)(b).

The second element set under which an individual can be convicted under § 207.190 is for

a felony.  The only way that the crime qualifies as a felony is where the defendant commits one of the acts outlined in § 207.190(1), and "[w]here physical force or the immediate threat of physical force is used."  Nev. Rev. Stat. § 207.190(2)(b).  Thus, under Nev. Rev. Stat. § 207.190(2)(b), a defendant can be convicted for violating one of two sets of elements.  For a felony conviction, the defendant must have used physical force or the immediate threat of physical force.  The Court determines, however, that neither set of elements requires physical force as that phrase is understood in the context of U.S.S.G. § 2L1.2.

The Court's research did not reveal any Nevada case law interpreting the phrase "physical force or the immediate threat of physical force."  Rather, the Court is faced with language in § 207.190 that is nearly identical to that in U.S.S.G. § 2L1.2.  Without Nevada state-court judicial interpretations of the meaning of "physical force or the immediate threat of physical force" in § 207.190 that would suggest a difference from the nearly identical language in U.S.S.G. § 2L1.2, the Court would normally apply an ordinary understanding of the words to determine their meaning.  When comparing the language from  U.S.S.G. § 2L1.2 and from the Nevada statute, the main difference is that the Nevada statute requires an "immediate threat of physical force," while U.S.S.G. § 2L1.2 requires only "threatened use of physical force."  If the Nevada statute's language does anything, it narrows the universe, qualifying threats of physical force to those threats that are immediate.  U.S.S.G. § 2L1.2 contains no such limitation.

A textual comparison of the nearly identical language, however, does not suffice to determine whether the Nevada Coercion statute is a crime of violence.  The Tenth Circuit has interpreted "physical force" to have specialized meaning in light of the phrase's application to a category of offenses that Congress has labeled "crimes of violence."  Accordingly, in the context of the U.S.S.G. § 2L1.2, the Tenth Circuit has adopted a narrower interpretation than what the plain

meaning might suggest.

First, the Tenth Circuit in United States v. Rodriguez-Enriquez decided that "the adjective

physical must refer to the mechanism by which the force is imparted to the person of another." 518

F.3d at 1194 (emphasis in original). The Tenth Circuit explored the meaning of physical force by

asking:

> In what circumstances, then, are we likely to think of the force as being generated
> by physical means? When someone is struck by a fist, a bat, a projectile, we have no
> difficulty in characterizing the force against the person as physical. In those instances
> the force on the victim is generated mechanically. Kinetic energy from the fist, bat,
> or projectile is transferred to the body of the victim. Although the matter is far from
> certain, the absence of colorable alternative meanings for physical suggest that it is
> the presence of this mechanical impact that defines when force is physical. In
> contrast, the effect of poison on the body is achieved by chemical action, not by
> mechanical impact.

Id. emphasis in original).

Second, the Tenth Circuit has recently suggested that the Supreme Court's interpretation of

crimes of violence under 18 U.S.C. § 16, which requires "violent, active crimes," applies to U.S.S.G.

§ 2L1.2.  The Tenth Circuit in United States v. Herrera explained:

> Having clearly found that offensive non-violent touching qualifies as battery under
> Cal.Penal Code § 242, we must determine whether or not § 242's definition has as
> an element the use, attempted use or threatened use of physical force against the
> person of another as required by the enhancement at issue. As stated by the Supreme
> Court in Leocal, crimes of violence suggest a category of violent, active crimes. 543
> U.S. at 11 . . . .  This categorical statement conflicts with the California courts'
> numerous holdings that the least offensive touching may constitute battery under §
> 242.  Based on the cited statement from the Supreme Court in Leocal, 543 U.S. at 11
> . . . which we have interpreted in Hays, non-violent touching seems to exist outside
> the category of active, violent crimes.

United States v. Herrera, 286 Fed.Appx. at 558.  In deciding that a California battery statute was not

a crime of violence for purposes of  U.S.S.G. § 2L1.2, the Tenth Circuit noted: "The principle in

Leocal – that crimes of violence suggest a category of active, violent crimes – does not correlate

-15-

with the statement made by the California Supreme Court in <u>Colantuono</u> – that the least touching

constitutes battery in California under § 242."   <u>United States v. Herrera</u>, 286 Fed.Appx. at 557.

Thus, the Tenth Circuit held:

> Having clearly found that offensive non-violent touching qualifies as battery under Cal.Penal Code § 242, we must determine whether or not § 242's definition has as an element the use, attempted use or threatened use of physical force against the person of another as required by the enhancement at issue.  As stated by the Supreme Court in <u>Leocal</u>, crimes of violence suggest a category of violent, active crimes.  543 U.S. at 11 . . . .  This categorical statement conflicts with the California courts' numerous holdings that the least offensive touching may constitute battery under § 242.  Based on the cited statement from the Supreme Court in <u>Leocal</u>, 543 U.S. at 11 . . . which we have interpreted in Hays, non-violent touching seems to exist outside the category of active, violent crimes.

<u>United States v. Herrera</u>, 286 Fed.Appx. at 558.

Before <u>United States v. Herrera</u>, it was unclear whether the Supreme Court's interpretation

of 18 U.S.C. § 16 applied to U.S.S.G. § 2L1.2.  In <u>United States v. Moya-Matute</u>,  2008 WL

4104129 (D.N.M.), however, this Court extensively analyzed the Tenth Circuit cases dealing with

the question and concluded that 18 U.S.C. § 16's violence requirement also applied to U.S.S.G. §

2L1.2.  <u>See</u> <u>United States v. Moya-Matute</u>, 2008 WL 4104129, at *19 (D.N.M.).  This Court in

<u>United States v. Moya-Matute</u> explained that:

> The crime of domestic battery under Indiana law contains use of physical force as an element. The Court can say that it is a crime of violence per se. While the Court is reluctant to add a word that Congress did not add, <u>the Tenth Circuit has defined crime of violence to require that the physical force be "violent," "destructive," and "mechanical."</u> Nevertheless, the Court believes the Indiana statute satisfies these elements. The Indiana domestic-battery statute criminalizes the use of physical force upon a person and not just the result of that force. The Indiana domestic-battery statute thus requires physical force as an element. Thus, violation of the Indiana domestic-battery statute is thus per se a crime of violence.

<u>United States v. Moya-Matute</u>, 2008 WL 4104129, at *20 (emphasis added).  The Tenth Circuit's

recent opinion in <u>United States v. Herrera</u> is consistent with the Court's conclusion in <u>United States</u>

v. Moya-Matute.

Accordingly, the physical-force element for a crime of violence under  U.S.S.G. § 2L1.2 requires mechanical, violent, physical force.  Although the Court is reluctant to characterize in any way, the Supreme Court and the Tenth Circuit as adding words that the drafters did not include in 18 U.S.C. § 16 and to U.S.S.G. § 2L1.2, the judicial glosses make sense when examined in light of the context in which physical force appears – namely, as the defining element of a non-enumerated crime of violence.  In Leocal v. Ashcroft, the Supreme Court in a unanimous opinion explained:

> In construing both parts of § 16, we cannot forget that we ultimately are determining the meaning of the term "crime of violence." The ordinary meaning of this term, combined with § 16's emphasis on the use of physical force against another person (or the risk of having to use such force in committing a crime), suggests a category of violent, active crimes that cannot be said naturally to include DUI offenses.

Leocal v. Ashcroft, 543 U.S. at 11.  Thus, the appellate courts have understood that physical force cannot be interpreted in a vacuum.  Rather, the Supreme Court and the Tenth Circuit have remained cognizant that they are interpreting physical force as the defining element of a so-called crime of violence.

To determine whether felony Coercion contains an element set that would constitute a crime of violence, the Court must therefore analyze whether physical force, as that term is understood under the Nevada statute, requires a mechanical, violent act.  The Court is not convinced that it does.  First, the Nevada Coercion statute appears to recognize that physical force does not equate to violence.  One part of the Coercion statute provides that Coercion may be accomplished if the defendant used "violence or inflict[ed] injury."  Nev. Rev. Stat. § 207.190(1)(a).  Later, the statute states that such action is a misdemeanor if "no physical force or immediate threat of physical force is used."  Nev. Rev. Stat. § 207.190(2)(b).  In other words, a misdemeanor violation of Nev. Rev. Stat. § 207.190(1)(a), which requires violence or injury, does not require physical force.  For there

to be a meaningful distinction between the felony, which requires physical force, and the misdemeanor, which does not, it is apparent that physical force adds something apart from the violence/injury requirement in Nev. Rev. Stat. § 207.190(1)(a).  The Court therefore believes the drafters of the Nevada statute consider physical force to be something different that violence.  Moreover, the structure of the statute suggests that it would be possible to carry out an act of physical force without also committing violence or inflicting injury.

Second, Nevada courts have not discussed the acts or the magnitude of force required to constitute physical force under its Coercion statute.  The Court must therefore appeal to common sense and to the ordinary understanding of those words.  In doing so, the Court notes that the words physical force do not, in their ordinary common-sense usage, imply violence.  The mechanical impact that the Tenth Circuit discussed in Rodriguez-Enriquez can occur without violence.  Black's Law Dictionary defines violence as: "The use of physical force, usu. accompanied by fury, vehemence, or outrage; esp., physical force unlawfully exercised with the intent to harm."  Black's Law Dictionary (8th ed. 2004).  In other words, violence suggests physical force in addition to something else: intent to harm, or accompanied by fury, vehemence, or outrage.  See id.

Neither the Nevada statute, nor the Nevada case law interpreting the scope of physical force have indicated that physical force should be interpreted in any way different from its plain meaning.  The Court will therefore assume the plain meaning applies.  Consequently, the Court believes that the elements of felony Coercion in Nevada can be met without the use of violent physical force.  Felony Coercion therefore does not categorically constitute a crime of violence.  Given that both the felony and misdemeanor offenses for Coercion can be accomplished without violent physical force, there is no element set in the Coercion statute that constitutes a crime of violence.  An examination of the statutory language alone is sufficient to reach that conclusion.

The United States concedes that Nev. Rev. Stat. § 207.190 reaches a broad range of conduct, some of which would warrant an enhancement, and some of which would not. See Response at 3. The United States notes that it is possible for a defendant to incur a felony conviction under the statute by violating Nev. Rev. Stat. § 207.190(1)(a) while using physical force or the threatened use of physical force. See Response at 2. Thus, the conviction would obtain where the defendant: (i) used "violence or inflict[ed] injury upon the other person or any of his family, or upon his property, or threaten[ed] such violence or injury," Nev. Rev. Stat. § 207.190(1)(a); and (ii) used "physical force or the immediate threat of physical force," Nev. Rev. Stat. § 207.190(2)(a).

The Court agrees that such a felony conviction is possible under the statute. It is also possible, however, for a defendant to be convicted of the Category B felony for violating Nev. Rev. Stat. § 207.190 without using violence or inflicting injury. The Category B felony can be accomplished by at least two other means: (i) by "[d]epriv[ing] the person of a tool, implement or clothing, or hinder[ing] him in the use thereof,"  Nev. Rev. Stat. § 207.190(1)(b); or (ii) "[a]ttempt[ing] to intimidate the person by threats or force," Nev. Rev. Stat. § 207.190(1)(b). The United States argues that it is permissible for the Court to analyze the charging documents to narrow down whether Carbajal-Hernandez' conviction came through Nev. Rev. Stat. § 207.190(1)(a), which requires violence, or through either Nev. Rev. Stat. § 207.190(1)(b) or Nev. Rev. Stat. § 207.190(1)(c), neither of which require violence. To this end, the United States has provided three charging documents for Carbajal-Hernandez' Nevada conviction: (i) the Amended Indictment, filed in federal court January 7, 2009 (stating that Carbajal-Hernandez was "accused by the Clark County Grand Jury of the crime of **COERCION (Category B Felony - NRS 207.190)**")(bold in original); (ii) the Guilty Plea Agreement, filed in federal court January 7, 2009 (stating "I hereby agree to plead guilty to:  **COERCION (Category B Felony - NRS 207.190)**")(bold in original); and (iii) the

Amended Judgment of Conviction (adjudging Carbajal-Hernandez guilty of the offense defined as **COERCION (Category B Felony), in violation of NRS 207.190**)").

The United States insists that the charging documents reveal that Carbajal-Hernandez' conviction must have come through Nev. Rev. Stat. § 207.190(1)(a).  The United States points out that the Amended Indictment contains no indication that the conviction was for violating Nev. Rev. Stat. § 207.190(1)(b) or Nev. Rev. Stat. § 207.190(1)(c).  The United States, in making the argument it does, urges the Court to do what the Tenth Circuit has said may not be done in applying the categorical or the modified categorical approach.  Namely, the United States essentially wants the Court to look to the facts of the offense that the charging documents lay out to infer for what conduct Carbajal-Hernandez was convicted.  The Court notes, however, that the charging documents do not delineate the subsection under which Carbajal-Hernandez pled guilty.  Rather, the charging documents list the offense as **COERCION (Category B Felony – NRS 207.190)**.  Thus, contrary to the United States' contention, the charging documents do not illuminate under what subsection Carbajal-Hernandez pled guilty.

The Nevada statute has multiple paths to a Category B felony for Coercion.  For the Category B felony for Coercion to constitute a crime of violence, the United States must show that it is not possible to be convicted for the Category B felony for Coercion without the use of physical force as that term is understood in U.S.S.G. § 2L1.2.   See United States v. Zuniga-Soto, 527 F.3d at 1118 ("To constitute an element of a crime, the particular factor in question needs to be a constituent part of the offense that must be proved in every case to sustain a conviction under a given statute.")(internal quotation marks and citations omitted).  The United States argument establishes the opposite: Carbajal could have been convicted for the Category B felony for Coercion using, for example, intimidation, or by depriving a person of a tool, implement, or clothing.  It is not

permissible to look at the factual allegations in the charging documents to figure out whether the conviction was for the violent, as opposed to the non-violent variety of the Category B felony for Coercion.  See United States v. Zuniga-Soto, 527 F.3d at 1118 (noting that "[w]hat [the defendant] actually did is irrelevant to whether the statute has [a particular] element. The elements are the elements, and they can be determined only by reading and interpreting the statute itself"(brackets in original)(internal quotation marks and citations omitted).

Although the Court is unsure why, the United States insisted in its briefing and at the hearing that the physical-force requirement in Nev. Rev. Stat. 207.190(a) was a sentencing factor rather than an element of the offense.  See Response at 4, Tr. II at 5:12-19 (McCulloch).  The United States could not, however, point to any legal authority to support its contention.  The Court, in its independent research, does not find authority to support the notion that physical force is not an element of felony Coercion.  The statute states that, "[w]here physical force or the immediate threat of physical force is used,"  Nev. Rev. Stat. § 207.190(2)(a), the act is punishable as a felony.  In other words, physical force or the immediate threat of physical force constitute additional elements required for the offense to constitute a Category B felony.  In any event, even if the Court credited the United States' argument in this regard, the argument would not alter the Court's ultimate conclusion that Category B felony Coercion under the Nevada statute is not a crime of violence under U.S.S.G. § 2L1.2.  The strongest argument for finding Felony Coercion to be a crime of violence is that all Felony Coercion convictions require the use or threatened use of physical force.  The Court has found, however, that physical force under Nevada's Coercion statute does not constitute the physical force necessary to make Coercion a crime of violence for purposes of U.S.S.G. § 2L1.2.

In sum, the Court determines that it need not look beyond the language of the statute to

conduct its analysis.  The Court also finds that, to constitute a crime of violence pursuant to U.S.S.G. § 2L1.2, a non-enumerated crime must be one that has, as an element, the use or threatened use of mechanical, violent, physical force.  Given that standard, the Nevada Coercion statute does not constitute a crime of violence.  The Court therefore declines to apply the 16-level sentencing enhancement from U.S.S.G. § 2L1.2.

**IT IS ORDERED** that the 16-level enhancement from U.S.S.G. § 2L1.2 shall not apply.

UNITED STATES DISTRICT JUDGE

*Counsel*:

Gregory J. Fouratt
  Attorney General
Mary Catherine McCulloch
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Thomas B. Jameson
  Assistant Public Defender
Albuquerque, New Mexico

     *Attorney for the Defendant*